UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DONNA CONAWAY, )
)
    Plaintiff, )
)
vs. ) Cause No. 1:09-cv-0635-WTL-DML
)
MICHAEL J. ASTRUE, Commissioner of )
Social Security,, )
)
    Defendant. )

## ENTRY ON JUDICIAL REVIEW

Plaintiff Donna Conaway requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

## PROCEDURAL BACKGROUND

Conaway initially applied for SSI and DIB on November 28, 2001, alleging that she became disabled in September 2001 due to pain in her neck, back, shoulders and head. Her application was denied in July 2003 following a hearing before ALJ Paul Armstrong. Conaway did not appeal the decision. Instead, on August 21, 2003, she filed subsequent applications for SSI and DIB, again alleging disability as of September 2001. That application was denied initially and upon reconsideration, after which she again requested and was granted a hearing before an Administrative Law Judge ("ALJ"). The hearing, at which Conaway was represented by counsel, was held before ALJ Joseph Schloss. The ALJ issued his decision denying Conaway's application on September 21, 2005. The Appeals Council granted Conaway's request for review, and in April 2006, vacated ALJ Schloss' decision and remanded to an ALJ for further proceedings. A

supplemental hearing was held on March 6, 2008, before ALJ Andrew Tranovich, at which Conaway was again represented by counsel. On October 10, 2008, ALJ Tranovich issued a decision denying Conaway's applications. After the Appeals Council denied review of that decision, Conaway filed this timely appeal.

## APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so,

---

[1]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

2

the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## **DISCUSSION**

Conaway was injured in an automobile accident in October 2000 and has consistently complained of and sought treatment for neck, back and shoulder pain since. She alleges that the pain is disabling; the ALJ disagreed, finding that while she suffered from the severe impairments of obesity and degenerative changes along her spine, she retains the residual functional capacity

3

("RFC") to perform her past relevant work as a packager as well as a significant number of other jobs, including general office clerk and receptionist.

The ALJ specifically found that the evidence of record "provide a sufficient basis for believing [Conaway] has some degree of pain in her neck and back." Record at 35. The evidence in question included three MRIs of her cervical spine, which the ALJ summarized as follows:

> Each one has been interpreted differently. Most of the differences have to do with where and how much neural foraminal narrowing exists. However, one physician stated she has mild stenosis at C5-6 and moderate stenosis at C6-7, another physician stated the disc at C6-7 is herniated, and the physician who interpreted her most recent MRI detected "very minimal" disc bulge at C4-5.

*Id.* (record citations omitted). Where, as here, the ALJ finds that a claimaint suffers from an impairment that could reasonably be expected to produce pain as alleged, the ALJ must articulate his reasons for discounting the allegation of disabling pain. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). Further, the ALJ "cannot disbelieve [a claimant's] testimony solely because it seems in excess of the 'objective' medical testimony." *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006). This is because "[t]he etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be 'read off' from a medical report." *Id.*

The ALJ in this case gave several reasons for discrediting Conaway's allegation of disabling pain. First, he attempted to "read off" the severity of her pain from her medical records, stating that "the absence of significant stenosis and the lack of persistent muscle spasm indicate her pain is likely mild in severity and, to be charitable, certainly no more than moderate." Record at

4

35 (record citations omitted). The basis for the ALJ"s belief that the type of pain alleged by Conaway would necessarily be accompanied by "significant stenosis" and "persistent muscle spasm" is unclear; regardless, it ignores the fact that disabling pain can occur even when the cause of it does not show up on an MRI or other objective test.

The ALJ next noted that Conaway has complained of "pain in her head radiating into her neck, back and shoulders" and that she also has reported "tingling in her upper extremities," but he found those complaints to be incredible because "[t]he record . . . provides no objective basis for radiculopathy." This finding, as Conaway points out, completely ignores the fact that Conaway underwent an EMG in March 2006 that found "bilateral irritative changes, multiple cervical spinal roots" which were "consistent [with] diffuse cervical radiculopathy." Thus the record *does* contain objective evidence of radiculopathy. Whether an EMG is a more or less reliable indicator of radiculopathy than the MRIs and subjective comments cited by the ALJ[2] is a medical question that neither the Court nor the ALJ is qualified to answer without the assistance of a knowledgeable medical professional; it was certainly error for the ALJ to fail to even acknowledge that the EMG existed.

This error was compounded by the fact that the ALJ not only discredited Conaway based on his erroneous belief that the record contained no objective evidence of radiculopathy, but he also cited it as one of his reasons for discrediting the opinion of one of her physicians:

---

[2]The ALJ noted the following as evidence that Conaway does not have radiculopathy: "Although the bulging disc at C6-7 effaces the ventral aspect of [Conaway's] spinal cord and nerve roots, it does not indent, distort of otherwise disturb them. Nor is there evidence of damage to her spinal cord or nerve roots elsewhere along her spine. . . . I also note she lacks neurological or motor deficits in her extremities. Moreover, in April 2004, a treating physician stated she does not have radiculopathy and, in January 2006, she acknowledged the same thing." Record at 35 (citations omitted).

> Some of these same considerations cause me to reject Dr. Smith's opinion that [Conaway] is incapable of sustaining sedentary exertion. I note, for instance, he based his opinion partly on "diffuse radiculopathy" when, in fact, the overwhelming weight of the evidence indicates she has none.

Record at 37. The ALJ also echos his incorrect assumption that the extent of Conaway's pain can be determined by reviewing her MRI reports when he states:

> Dr. Smith also cited spinal stenosis and foraminal encroachment as reasons for the limitation he recommended. However, as noted above, there is disagreement among the doctors who have interpreted her MRIs in regards to the existence, location and extent of stenosis or narrowing along her spine. Even if I were to assume the worse aspects of each test together, the most they would show is that [Conaway] has only "mild" or "moderate" stenosis and narrowing.

*Id.* at 37-38.

Both the ALJ's assessment of Conaway's credibility and his decision regarding the weight to give Dr. Smith's opinion were tainted by his failure to recognize the March 2006 EMG and the fact that it constitutes objective evidence that Conaway does, indeed, suffer from radiculopathy. Accordingly, this case must be remanded so that the ALJ may reassess his decision in light of that fact. Given the apparently conflicting medical evidence of record, it may be necessary for the ALJ to obtain the testimony of a medical expert in order to interpret the various objective tests and medical records.

## **CONCLUSION**

For the reasons set forth below, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 03/09/2011

*[signature]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

6